HARVARD LAW SCHOOL LIBRARY.

FREEMAN ET AL. VS. PEAY, REC'R.

A mortgage, like any other deed, to be valid and operative, must not only be signed and sealed, but it must be delivered by the maker, and accepted by the mortgagee, or some one legally acting for him.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

GARLAND & RANDOLPH, for appellants.

The records read in evidence, and the deposition of Davies, who was a trustee of the Bank, and one of the committee to consummate this matter with Ware, show that instead of accepting the mortgage, the Bank rejected it, because of the incumbrance created by the deed of trust in favor of Ware's creditors under which Davies and Johnson now act. Then, if the mortgage was not accepted by the Bank, she has no rights under it. An acceptance of the mortgage was indispensable to complete the contract. 2 *Hilliard on Mortgages* 278; *Dale vs. Bodman,* 3 *Metcalf* 139; *Jackson vs. Phipps,* 12 *Johnson Rep.* 418.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

The only question to be decided in this case is, whether the mortgage, which Peay, as receiver of the assets of the Real Estate Bank, seeks, by his cross-bill, to foreclose, for the payment of a stock note made by Ware, the mortgagor, was delivered by him, and accepted by the bank.

A mortgage, like any other deed, to be valid and operative, must not only be signed and sealed, but it must be delivered by the maker, and accepted by the mortgagee, or some one legally acting for him. 2 *Hiliard on Mort.* 278; *Jackson vs. Phipps,* 12 *John R.* 421; *Jackson ex. dem. McCrea vs. Dunlap,* 1 *John. Cas.* 114; *Dole vs. Bodman, et al.* 3 *Metc. R.* 142; *Sheppard's Touchstone,* 57.

It is alleged in the cross-bill that the mortgage was delivered, accepted, proven and recorded; but Ware, in his answer, in response to the allegation, and to a special interrogatory put to him by Peay, positively states that it was not accepted by the bank, but on the contrary, was absolutely rejected; and Anthony H. Davies, who was a director in the branch of the

bank at Columbia, where the transaction occurred, and whose deposition was the only one read upon the hearing, most emphatically sustains the answer of Ware as to the refusal of the bank to accept the mortgage.

Abner Johnson was the owner of 300 shares of the capital stock of the bank, had executed his stock bond for $30,000, secured by mortgage, and, it seems, the bank, upon faith thereof, had discounted his stock note for $15,000. He agreed to transfer to Ware, who desired to become a stock-holder, 100 shares of his stock. It appears that, on application to the board of directors, the following order was made, 30th March, 1840.

" Ordered by the board that the transfer of one hundred shares of Abner Johnson's stock be made to Thomas Ware, and the notary is hereby authorized to prepare all the acts necessary to carry the same into execution."

The cashier of the bank was the notary, and it seems that in pursuance of the above order, Ware, on the 1st of April, 1840, executed a stock bond for $10,000, a mortgage upon 633 acres of land, known as the Ware place, on Old River lake, in Chicot county; and Davies states that in anticipation of the completion of the transfer of stock, etc., Ware's stock note for $5,000 was discounted. But the board of directors, as above shown, rejected the mortgage, on the ground that the lands were encumbered; Johnson was not released from any of his stock, and Ware failed to become a stock-holder. The bank made an effort, after the rejection of the mortgage, to secure the stock note and other debts of Ware, by deed of trust, but failed. The mortgage remained in the bank until after the deed of assignment to trustees, and finally, on the 2d of May, 1843, the attorney of the trustees procured the attesting witnesses to go before the recorder of the county, and prove the subscribing of the mortgage by Ware, and caused it to be registered, without the knowledge or consent of Ware.

The bank, or its cashier, acted hastily, or incautiously in discounting Ware's note before a satisfactory mortgage was executed by him and accepted by the board of directors.

Ware, however, denies most positively, in his answer, that he ever received of the bank one dollar on the note; on the contrary, he states that the amount for which he gave the note was to be credited on Abner Johnson's stock note; and there are some facts in the record that favor the truth of his answer in this respect.

On the same day (3d March, 1840,) that the order was made for the notary to prepare the necessary papers for the transfer of 100 shares of Johnson's stock to Ware, it appears that the board also passed the following resolution:

" *Resolved*. That the cashier be, and he is hereby authorized to open the stock credit account of Thomas Ware for five thousand dollars, on account of the one hundred shares of stock purchased from Abner Johnson, and that he be hereby authorized to substitute his stock note in lieu of five thousand dollars of said Johnson's stock note, and that said Johnson be authorized to withdraw his former stock note, and substitute a new one for ten thousand dollars, being the sum due."

If Ware made his note for $5,000, under this resolution, it is hardly probable that the bank was guilty of the gross error of giving Johnson credit for that amount, and at the same time advancing to Ware the amount of the note, in its bills, less the usual discount, etc.

Moreover, Ware's note was made in April, 1840, but was dated back to 26th October, 1839, to correspond, it seems, with the date of Johnson's stock note; which favors the conclusion that it was to be substituted for so much of his note; for if the note had been discounted, it is but reasonable that it would have been dated on the day the money was advanced to Ware upon it.

If this be the correct version of the matter, the bank was under no legal necessity of suffering any loss by the transaction; because if Johnson was credited with the amount of Ware's note in anticipation that the agreement between them for the transfer of stock would be perfected by the execution of the necessary securities, and the completion of the agreement

failed, by reason of the rejection of the mortgage made by Ware, Johnson was not entitled to a credit for the amount of Ware's note, and remained legally indebted to the bank as before.

But be this as it may, we have seen that the mortgage never became operative for want of complete execution, and this is the only material point to be decided in the cause.

On the 4th of May, 1843, Ware, (having given up all idea of becoming a stockholder in the bank, as he alleges,) executed a deed of trust upon the lands in controversy, for the benefit of his creditors. The lands were sold 14th April, 1856, by a commissioner, under a decree foreclosing the deed of trust, and purchased by Lane, who sold them to Goodloe, and he transferred them to Freeman, who filed the original bill in this case. At the time the bill was filed, Davies, one of the trustees in the deed of trust, held in his hands $5,000, part of the sum brought by the lands under the commissioner's sale. The court below decreed that the mortgage was a valid security for Ware's stock note, and paramount to the deed of trust: and that unless Freeman paid the amount due the bank, on the note, by a day named, the lands should be sold, etc., and by way of indemnity to Freeman, decreed to him the $5,000 in the hands of Davies.

The decree must be reversed, and a decree entered here, and certified to the court below, dismissing the cross-bill, and enjoining the receiver of the bank from further proceedings to enforce the mortgage on account of Ware's stock note, and Davies will be permitted to pay over the money in his hands to such of the beneficiaries in the trust deed, as may be rightfully entitled to it.

Mr. Justice FAIRCHILD did not sit in this case.