[Filed February 15, 1888.]

JAMES SHIRLEY, APPELLANT, *v.* H. C. BURCH ET AL.,
RESPONDENTS.

MORTGAGES—MORTGAGEE'S NAME LEFT BLANK.—An instrument purporting to be
a mortgage, but containing the name of no mortgagee, cannot be rendered valid
by filling in of the name of a mortgagee by an agent to whom the mortgagor had
delivered the paper, with instructions to fill in the blank and obtain money from
whomsoever would take it and advance the money thereon.

SAME—DELIVERY.—Where the person named as payee in a note and accompanying
mortgage never had any interest in the same and knew nothing of the transaction,
and the said papers were not delivered to him but were delivered to another;
*held*, that the mortgage was void for lack of delivery.

FICTITIOUS PERSON NAMED AS MORTGAGEE.—Where the evidence disclosed that a
person of the same name as the mortgagee named in the mortgage lived in the
city where the loan was negotiated, but that such person disclaimed any knowl-
edge of or connection with the transaction; *held*, that the payee and mortgagee
are *fictitious*.

SAME—FORECLOSURE.—A court of equity will not decree foreclosure of a mortgage
void in law for want of a proper mortgagee, even though the plaintiff has been
imposed upon by fraudulent acts of a broker, and all the acts of the plaintiff
were in good faith.

OBJECTIONS—WHEN WAIVED—APPEAL.—An erroneous decree will not be dis-
turbed by an appellate court where no objection thereto is made by the party to
be affected thereby.

APPEAL from Yamhill County.

*N. B. Knight*, and *J. J. Murphy*, for Appellant.

*Ramsey & Bingham*, for D. B. Gaunt.

*Ford & Kaiser*, for A. N. Gilbert and M. E. Campbell.

STRAHAN, J.—This is a suit commenced by the plaintiff
against the defendants, H. C. Burch and wife, W. McGee, H. C.
Wandt, Gilbert Brothers, J. A. Stratton, D. B. Gaunt, M. E.
Campbell, Meier and Frank, and G. N. Townsend, to foreclose a
mortgage on certain real property in Yamhill County. Burch
and wife are alleged to be the makers of the mortgage, and the
other defendants are alleged to have liens on the mortgaged
premises subsequent to that of the plaintiff. The complaint
amongst other things alleges in substance the making of the
note sued on to one Joseph Chandler, or bearer, for two thou-
sand five hundred dollars, on the 24th of March, 1882, by the

defendant H. C. Burch; the making of the mortgage to secure the same at the same time, which was executed and delivered to "said Joseph Chandler, payee, in said promissory note."

The complaint also contains the following allegation: "That the plaintiff is now the lawful owner and holder of said promissory note and said mortgage, having purchased the same for a valuable consideration long before the maturity thereof of said mortgagee, who duly assigned the same to the plaintiff by delivery to him of said note and mortgage. All of the defendants except Meier and Frank answered, denying the material allegations of the complaint, and the alleged junior lien-holders each set up his particular claim, and claimed priority over the plaintiff's mortgage. They deny the execution or delivery of said note and mortgage to Joseph Chandler, or the assignment or delivery thereof to the plaintiff, and allege that said Chandler is a fictitious person.

The cause being at issue, it was referred to take the evidence and report the same to the court, and upon the report being filed, the case was heard by the court and a decree rendered postponing the plaintiff's lien to that of all of the other lien claimants, and settling their equities and priorities between themselves, and decreeing the sale of the premises described in the mortgage to satisfy the claims in the order specified in the decree. From that decree the plaintiff has appealed to this court, and the cause has been ably argued here, both on the facts and law.

The court below found a number of facts which are stated in the record, a part of which are as follows: (1) That on the twenty-fourth day of March, 1882, the defendant executed the note described in the complaint for the sum of two thousand five hundred dollars, due in two years from date thereof, interest at the rate of ten per cent per annum, and agree by the terms thereof to pay a reasonable attorney's fee in case suit should be brought to collect the same, and delivered said note to one E. J. Dawne. (2) That on the twenty-fourth day of March, 1882, said defendant H. C. Burch executed the mortgage mentioned in the complaint with the intent on his part to secure the payment of said note, and delivered said mortgage to said E. J. Dawne;

and that on the twenty-fifth day of March, 1882, said E. J. Dawne caused said mortgage to be filed in due form in the county clerk's office of Yamhill County, and that the same was duly recorded in the records of mortgages in said county. (3) That the interest on said note was paid up to the twenty-fourth day of March, 1884, being two years from date, but that nothing more has been paid of principal or interest on said note, and that the sum of two thousand five hundred dollars, principal and interest, at ten per cent thereon, from the twenty-fourth day of March, 1884, is now due on said note. (4) That at the time said E. J. Dawne received said note and said mortgage from said H. C. Burch, he, said Dawne, was the agent of said plaintiff, and as such agent received said note and mortgage for the plaintiff and for his use and benefit. (5) That the consideration of said note and mortgage received by said Burch was paid to him by said E. J. Dawne as the agent of said plaintiff, and that such consideration, when so paid to said Burch, was the money or property of the plaintiff, and not the money or property of Joseph Chandler. (6) That as to said note and mortgage, Joseph Chandler named as the payee and mortgagee thereof, was and is a fictitious person, who had no interest in or knowledge of the same. (7) That said note and mortgage was never delivered to said Chandler, or assigned by him to the plaintiff. (8) That said H. C. Burch, at the date of said note and mortgage, received from E. J. Dawne the full consideration of said note, and at the time believed that the same was the money or property of Joseph Chandler.

1. On the argument in this court the only questions of fact which were contested were those presented by findings numbered 6 and 7. For the purpose of determining the correctness of those findings we have carefully examined the evidence. Joseph Chandler, the alleged payee of said note and mortgage, was examined as a witness, and from his evidence it is apparent that neither the note nor mortgage were at any time delivered to him, nor did he ever see or hear of them until after the commencement of this suit, and to all intents and purposes he was an entire stranger to the transaction. It is equally apparent from Chandler's evidence that he never assigned or delivered

said note or mortgage to the plaintiff, and that the pretended assignment offered in evidence is a forgery. But appellant's counsel contend that inasmuch as the evidence tends to show that said Dawne had, before the signing of the note and mortgage, been engaged in loaning some money for Chandler, that we ought to infer that the money delivered to Burch by Dawne at the time the note and mortgage were signed was Chandler's money, and that Dawne in that transaction was acting as Chandler's agent. If the evidence left any room for such an inference for the purpose of upholding and sustaining the transaction we would cheerfully adopt it; but unfortunately for the plaintiff it does not. It does not appear from the evidence how much of Chandler's money, if any, Dawne then had in his hands; but it does appear that Dawne's authority to loan had been expressly withdrawn before the date of the note and mortgage, and there is no evidence whatever tending in any manner to prove that in taking the note and mortgage by Dawne in Chandler's name, he was acting as agent for Chandler. Chandler was entirely ignorant of the transaction, and never in any manner approved or ratified it, or claimed any interest in or benefit from it, or knew of its existence until after this suit was commenced. All the evidence in the record tends to support findings 6 and 7, and we adopt them as the findings of this court upon the points covered by them.

2. But counsel for the appellant contend that, assuming these findings of fact to be correct, the conclusions of the court below as to the law were wrong. They claim that assuming this note to have been made to a fictitious person, it is valid under section 3191 of Hill's Code, which provides: "Such notes made payable to the order of the maker thereof, or to the order of a *fictitious person*, shall, if negotiated by the maker, have the same effect and be of the same validity as against the maker, and all persons having knowledge of the facts, as if payable to bearer." There was such a person as Joseph Chandler. The evidence discloses this fact, but it discloses the further fact that he had no interest in the note, and was not intended to become a party to it. In such case, the payee is to be deemed *fictitious*. (1 Daniel on

Negotiable Instruments, § 140.) But we need not consider or decide the question of Burch's liability to Shirley on this note. The question was not argued, and we do not wish to decide it without argument. Burch's liability was not contested by respondents' counsel. Their contention was as to the validity of the mortgage, and that presents the real question in this case.

3. Appellant's counsel contend that if one make a note and mortgage complete in every particular except that the name of the payee and mortgagee are left blank, and they are then delivered to an agent with authority to procure money from any person who will advance it on the securities, that such agent may fill the blanks and deliver the note and mortgage, and that they will be enforced. (*Van Etta* v. *Evenson*, 28 Wis. 33; *Drury* v. *Foster*, 2 Wall. 24.) These authorities support the proposition stated by counsel, but they only show that a parol authority to fill a blank by the mortgagor's agent before the delivery is good, and that authority to do that act need not be in writing. The mortgage is not delivered in blank or without the name of the mortgagee being inserted, and therefore it is not perceived how these authorities in any way support the appellant's contention. One of the first requisites of every deed is the necessary parties. There can be no deed without a grantor and a grantee, and the principle applies to all deeds, including mortgages. A mortgagee capable of holding real estate must be named in every mortgage. (1 Hilliard on Mortgages, p. 10, § 5.) So it was held in *Chauncey* v. *Arnold*, 24 N. Y. 330, that an instrument in the form of a mortgage, but containing the name of no mortgagee, does not become effectual by its delivery to one who advances money upon the agreement that he shall hold the paper as security for his loan. So a patent to a fictitious grantee is null and void. (*U. S.* v. *Southern Colorado Coal & T. Co.* 1 West. C. Rep. 11.) And the same principle is held in *Downing* v. *Bartels*, 2 West. C. Rep. 506; *Thomas* v. *Wyatt*, 31 Mo. 188; 77 Am. Dec. 640; *Kelley* v. *Bourne*, 15 Or. 476.

4. It has thus far been assumed that this mortgage is to be treated as if made to a fictitious person, or contained the name of no mortgagee capable of acquiring an interest in real property

in this State, and such we think must be its legal effect. Joseph Chandler was not a party to the transaction. He had no knowledge of it. He never assented to it, nor did he in any manner authorize it. Neither the note nor mortgage was ever delivered to him, and he had no more knowledge of or interest in the transaction than if made to any other stranger. Under these facts the mortgage lacked another indispensable requisite, it was never delivered. Without delivery it could not take effect or create any valid lien upon the land described in it. Delivery is just as necessary to the completion of the transaction as the signing, sealing, or acknowledging of the mortgage. (*Goodwin* v. *Owen,* 55 Ind. 243; *Dole* v. *Bodman,* 3 Met. 139; *Eames* v. *Phipps,* 12 Johns. 418; *Freeman* v. *Peay,* 23 Ark. 439; *Chauncey* v. *Arnold, supra;* 1 Devlin on Deeds, § 260; *Fain* v. *Smith,* 14 Or. 82; 58 Am. Rep. 281.) It is not necessary to consider what is a sufficient delivery, or what acts of the parties are requisite to constitute a delivery, for the reason that what these parties did would not constitute a delivery within any rule of law with which we are acquainted, or to which reference has been made by counsel.

5. The court in effect found that the note sued on was not made or delivered to Chandler, or by him sold, assigned, or delivered to the plaintiff, but was delivered directly to the plaintiff through the agency of Dawne. This finding is at variance with the allegations in the complaint, and if the evidence had been objected to, or if it had been contested here, the variance would have been fatal to the plaintiff's recovery on the note, on the elementary principle that a party cannot declare one state of facts and recover on other and altogether different facts. The proofs and allegations must agree. But no objections have been made to the decree against Burch on any ground, and for that reason we will not disturb it.

6. Counsel for appellant seemed to assume in his argument that the necessities of the plaintiff's case ought to furnish some reason or excuse for the interposition of equity to aid him. But this is not enough, no difference how pure may have been a party's motives, or how meritoriously he may have acted in the

particular transaction. The rules of equity have the same certainty, and are administered with the same regularity as the rules of law, and to enable a party to obtain relief in that form he must bring his case fairly under some one or more of the acknowledged heads of equity jurisdiction.

A very careful examination of the whole case leads us to the conclusion that there was no error committed by the court below, and the decree will therefore be affirmed, except the costs will be adjudged as suggested in the concurring opinion of my brother THAYER.

THAYER, J., concurring. — The question to be determined in this case is whether the mortgage, which the suit was brought to foreclose, ever had any valid inception. It purports to have been executed by H. C. Burch to Joseph Chandler on the twenty-fourth day of March, 1882, to secure the payment of the sum of two thousand five hundred dollars, and interest, in accordance with the terms of a promissory note bearing even date therewith, which also purported to have been executed by said Burch to the order of Chandler, or bearer, and payable two years after date, with interest at the rate of ten per cent per annum, and such additional sum as the court might adjudge reasonable as attorney's fees.

It appears from the testimony in the case that Burch desired to borrow two thousand five hundred dollars; that one E. J. Dawne, then residing at Salem, wrote him that he would let him have it; that Burch came over to Salem from Yamhill County, where he resided, and signed the note, and signed and acknowledged the mortgage and left them with Dawne, who gave him the money, after taking out of it the amount of a thousand-dollar mortgage, purporting to have been executed by Burch to the appellant, and taxes, some money paid to Mr. Ramsey, and fifty dollars brokerage fees; that the remainder of the money Burch received was about eleven hundred dollars. Dawne delivered over the note and mortgage to the appellant on or about their date. That on the third day of May, 1882, the appellant duly executed, under his hand and

seal, a written acknowledgment of satisfaction of the said thou-sand-dollar mortgage. Said instrument was duly acknowl-edged, and contains a recital that said thousand-dollar mortgage was recorded in the office of the clerk of the county of Yamhill on the fourteenth day of January, 1882. The appellant testified as a witness in the case "that Dawne came to him and asked him if he had any money to dispose of; that he told him he had; that Dawne asked him if he did not want some good paper; that he told him he did if it was good; that Dawne said it was good; that he asked him the amount it would take to lift it; that Dawne told him two thousand five hundred dollars, and he paid Dawne the money; that Dawne did not tell him what Joseph Chandler it was; that he supposed that when the note became due Dawne would collect it for him, and for that reason he gave no further thought about it.'

It appears there was, at the time of the transaction, a man residing in Salem by the name of Joseph Chandler, who lived near Dawne's place of residence, and that Dawne for some time did business for him in loaning money. Chandler was called by respondents, and testified as a witness in the suit that Dawne loaned the first money for him about 1876 or 1877; that he quit loaning money January, 1882; that he desired to use what money he had on hand, and to collect in what was outstanding, for the purpose of paying for some real estate in East Portland which he had negotiated the purchase of; that he got from Dawne thirteen hundred dollars to make up the first payment of two thousand dollars. That left a balance of two thousand dollars due on the property, to secure which he gave a mortgage; that he was unable to get any more money from Dawne at the time, as the man who had it had died, and Dawne told him he would have to wait until an administrator could sell some prop-erty to pay it; that in December, 1881, he gave Dawne instruc-tions to collect in his money, and not to loan out any more for him; that he got from Dawne his last money, $2,403.94, Janu-ary 18, 1883; that Dawne had no authority to lend money for him after January, 1882; that he never made any assignment of the note and mortgage in suit; that he first heard of said note

and mortgage about the 1st of November, 1885; that appellant was the first one who told him about it. · Burch, it appears, did not know until two years after he gave the note and mortgage but that Chandler was the owner and holder of them; Dawne continually so represented the matter to him.

This is an outline of the main facts in the case, and the counsel for the respective parties claim different conclusions therefrom. The appellant's counsel contend that the note and mortgage sued upon were intended to include Joseph Chandler as the real payee of the note and mortgagee in the mortgage, while the respondents' counsel insists that such payee and mortgagee are purely fictitious; that the name "Joseph Chandler" was so used without intending any real party. If the conclusion drawn by the appellant's counsel prevails, it presents the question whether the note and mortgage became effective in the hands of the appellant. Such instruments must be delivered to the party to whom the obligation contained therein is due before they have any force or virtue. If, therefore, said instruments had been intended for Chandler, a delivery thereof to Dawne would have been ineffectual, unless he were the agent of Chandler, and as such agent authorized to receive them for Chandler. And in order to vest the title of them in the appellant through a sale made by Dawne to him, the scope of Dawne's agency must have been sufficient to empower him to make the sale.

It is very doubtful, to say the least, whether the evidence in the case shows that Dawne was invested with any such agency. The authority to loan Chandler's money would empower Dawne to accept and receive securities therefor; but I hardly think that would authorize him to sell them, and if the testimony of Chandler is to be relied on, Dawne's authority to loan money had been revoked at the time of the transaction with Burch. If, however, these conjectures are wrong, still I am very positive that it cannot be maintained that the evidence proves that the money advanced to Burch belonged to Chandler. The testimony of the latter shows very conclusively that it did not. It shows that Dawne had at the time no money in his hands belonging to Chandler, available for any such purpose; that Chandler had

directed him not to lend any more of his money, but to collect in what was outstanding, and pay it over to him; besides if it had been Chandler's money, and it had been intended to take the note and mortgage to him, he would doubtless have been informed in regard to the loan.

The appellant at about the time the loan was made advanced to Dawne money, he says, to buy the security, and it is very evident that that was the money which was advanced to Burch. Why Chandler's name was inserted in the note and mortgage is very peculiar; but it seems to have been an irregular mode which parties engaged in loaning money through Dawne and others had adopted. They probably considered it an honest way to do business, but the courts must consider it from a legal standpoint. The result of the transaction, if Chandler's name was used without his knowledge or consent, was to render the note and mortgage inoperative. One person cannot make a contract with another without the knowledge and consent of the latter; it must be a mutual agreement between the contracting parties. A contract in form, with a person who is a stranger to it, stands upon the same footing as an assumed contract with a fictitious person. It would lack the essential elements of a contract — the meeting of the minds of the parties.

There is but one exception to this rule that I am aware of, that is in case of a promissory note made payable to the order of the maker thereof, or to the order of a fictitious person, and negotiated by the maker. The statute gives to such note the same effect and validity as against the maker, and all persons having knowledge of the facts as if payable to bearer. But the statute does not extend to mortgages. They must be upheld, if at all, by general rules applicable to contracts. The note in suit having been made payable to bearer may possibly, under the provisions of the statute, be held valid in the hands of the appellant. The Circuit Court seems to have so regarded it, and as the respondents have not appealed from that part of the decree, it is not necessary to consider the question. A question has, however, occurred to me. in considering the appeal, relative to the costs of the suit.

The rule of this court is, that the prevailing party in equity cases will usually be entitled to costs against the losing party; but in view of the fact that the appellant is subjected to a severe hardship in being deprived of a *lien* upon the premises for his debt; that the respondents are profited thereby; that he did not act dishonestly, or in bad faith, in the transaction out of which the debt arose, and that his misfortune has been occasioned by the bad advice he received concerning it, I think his case should be made an exception to the general rule upon that subject, and that his taxable costs and disbursements in the suit and on the appeal should be paid out of the proceeds of the sale of the mortgaged premises, with the other costs and disbursements therein, and that no costs or disbursements should be taxed against him in this court or in the Circuit Court.