Argued and submitted March 6, modified and remanded March 20, petition for
rehearing denied May 15, 1984

# LOUISIANA-PACIFIC CORPORATION,
*Plaintiff-Respondent,*

*v.*

# LUMBER AND SAWMILL WORKERS,
## LOCAL NO. 2949 et al,
*Defendants-Appellants.*

(TC E83-1738; SC 29940)

679 P2d 289

Robert A. Sacks, Portland, argued the cause and filed brief on behalf of Defendants-Appellants. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

James N. Westwood, Portland, argued the cause and filed brief on behalf of Plaintiff-Respondent. On the brief was Louis B. Livingston and Miller, Nash, Yerke, Wiener & Hager, Portland.

PETERSON, C. J.

## PETERSON, C. J.

Louisiana Pacific (L-P) sought and obtained a temporary injunction against Lumber and Sawmill Workers, Local No. 2949 (Union) and some of its officers and members. The defendants appealed directly to this court from the circuit court decree, claiming that the evidence does not support the issuance of a temporary injunction.[1] We find the evidence insufficient to hold the union responsible for the unlawful acts complained of, modify the temporary injunction, and remand the case to the trial court.

## I.
## APPLICABLE RULES OF LAW

This action for injunctive relief was brought under ORS 662.010 - 662.130, Oregon's counterpart of the federal Norris-LaGuardia Act, 29 USC § 101 *et seq.* The federal act was passed in 1932 by a Congress angered at the federal judiciary which was claimed to side with management in many of the labor disputes then facing the country. The report of the Senate Committee that reviewed the anti-injunction legislation pending before the 72nd Congress noted:

"That there have been abuses of judicial power in granting injunctions in labor disputes is hardly open to discussion * * *. Injunctions are often applied for and issued for the moral effect that such injunctions will have in disheartening and discouraging employees engaged in a strike, rather than any real necessity to protect property * * *." S Rep No. 163, 72nd Cong, 1st Session at 8, 21 (1932).

Following passage of the federal act, Oregon and 22 other states passed their own anti-injunction acts. W. Wilson, Labor Law Handbook § 702 (1963 and 1976 Supplement). The Oregon act was passed in 1933. Or Laws 1933, ch 355. Like its federal counterpart, the Oregon law sets forth specific procedural and substantive limits on the power of courts to grant

---

[1] ORS 662.040-662.120 variously refer to restraining orders, temporary injunctions, and permanent injunctions. In this case, a temporary restraining order was issued on August 8, 1983. After a hearing, a temporary injunction was issued on August 16, 1983. A temporary injunction under ORS chapter 662 has much the same function as a preliminary injunction issued under ORCP 79C.

ORS 662.120 permits a direct appeal to the Supreme Court. As directed by the statute, we have given "the proceedings precedence over all other matters, except older matters of the same character."

injunctive relief in labor disputes and requires certain prerequisites before the issuance of an injunction. Because the parties dispute the proper application of the Oregon law, we first set forth the rules which apply and then will apply the rules to the facts of this case.

ORS 662.020 declares the public policy of Oregon in part to be:

> "Whereas under prevailing economic conditions, * * * the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor * * * it is necessary that he have full freedom of association, self-organization and designation of representatives * * * and that he shall be free from the interference, restraint or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities * * *; therefore, the definitions of and limitations contained in ORS 662.010 to 662.130 upon the jurisdiction and authority of the courts of this state hereby are enacted."   ·

The act states that no court has jurisdiction to issue any injunction "to prohibit any person or persons participating [in any labor] dispute from doing, whether singly or in concert, any of the following:

> "* * * * *

> "(5)   Giving publicity to the existence of, or facts involved in, any labor dispute, whether by advertising, speaking, patrolling or by any other method not involving fraud or violence or intimidation.

> "(6)   Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute.

> "(7)   Advising or notifying any person of any intention to do any of the acts specified in subsections (1) to (6) of this section.

> "(8)   Agreeing with other persons to do or not to do any of the acts specified in subsections (1) to (7) of this section.

> "(9)   Advising, urging or otherwise causing or inducing without fraud or violence or intimidation, the acts specified in subsections (1) to (8) of this section, regardless of any undertaking or promise, as is described in ORS 662.030." ORS 662.050.

Acting in concert is expressly protected under ORS 662.060. It provides:

"No court * * * shall have jurisdiction to issue a restraining order or temporary or permanent injunction upon the ground that any of the persons participating or interested in a labor dispute constitute or are engaged in an unlawful combination or conspiracy because of the doing in concert of the acts enumerated in ORS 662.050."

A court may, however, issue an injunction against a union, its officers and individual members, as required by ORS 662.080(1), if each of the following facts is found *inter alia:*

— that unlawful acts have been committed or threatened

— that the person, association or organization alleged to have committed or threatened the unlawful act either

(a) committed it, or

(b) actually authorized it, or

(c) ratified the unlawful act "after actual knowledge thereof."

■ The parties do not disagree as to the application of the foregoing statutes. They disagree, however, whether ORS 662.070 is applicable. It reads:

"No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of this state for the unlawful acts of individual officers, members or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof."

The plaintiff claims that "clear proof" of individual responsibility is not required to be shown in an injunction action, that ORS 662.070 is applicable only in damage actions or contempt cases. Plaintiff cites two federal cases which conclude that the "clear proof" standard was not intended to apply to the issuance of an injunction. *See Charles D. Bonanno Linen Service v. McCarthy,* 532 F2d 189, 191 (1st Cir 1976); *Cf. Mayo v. Dean,* 82 F2d 554, 556 (5th Cir 1936) (court rejected clear proof but found a clear preponderance of the evidence).

The defendants argue that "clear proof" of individual responsibility is required before anyone can be enjoined for

unlawful conduct. They cite persuasive caselaw to support their assertions. *See, e.g., Harlem River Consumers Coop., Inc. v. Associated Grocers,* 450 F2d 271, 273 (2d Cir 1971) (requirement of clear proof applies to the issue of union responsibility).

We have no doubt that ORS 662.070 is applicable. Before an injunction can issue against a union, its officers, members or agents, "clear proof" of involvement need be shown. One of the abuses that the Norris-LaGuardia Act aimed to curb was the use of vicarious liability doctrines under which the misconduct of rank and file union members would be attributed to the union that sponsored a strike or picket line. Courts had applied the common law of conspiracy to hold unions liable "for every act committed by any member of a union merely because he was a member, or because he had some relation in the union although not authorized by virtue of his position to act for the union in what he did." *United Brotherhood of Carpenters and Joiners v. United States,* 330 US 395, 419, 67 S Ct 775, 778, 91 L Ed 973, 991 (1947) (dissenting opinion of Frankfurter, J.). Congress therefore decided to require clear proof of actual participation, actual authorization, or ratification before a union, union officer, or union member could be held liable or responsible for unlawful conduct. 29 USC § 106.

ORS 662.070 was enacted as one part of a law concerning the issuance of injunctions in labor disputes. ORS 662.040 bars a court from issuing an injunction "except in strict conformity with ORS 662.010 to 662.130." That mandate requires strict conformity with ORS 662.070 as with the other sections.

We construe ORS 662.070 precisely as the Supreme Court of the United States construed its identical federal counterpart, 29 USC § 106, in *Ramsey v. Mine Workers,* 401 US 302, 91 S Ct 658, 28 L Ed 2d 64 (1971). The Supreme Court held that the statute requires that whenever "illegal acts of any individual are charged against one of the major antagonists in a labor dispute—whether employer or union—the evidence must clearly prove that the individual's acts were authorized or ratified." 401 US at 310. Citing *United Brotherhood of Carpenters v. United States, supra,* the court iterated that the "clear proof" limitation is applicable to " 'all courts in

all matters growing out of labor disputes covered by the Act, which may come before them.' " 401 US at 310.[2] We hold that clear proof of participation, authorization or ratification with knowledge by the union or its officers or members sought to be enjoined is a prerequisite to their being enjoined against conduct involving unlawful acts of others.[3]

## II.
## SCOPE OF REVIEW

The trial court entered findings of fact upon which it based the temporary injunction.[4] The temporary injunction provided in part:

---

[2] In a footnote to the text cited, the *Ramsey* court observed the Labor Management Relations Act, which is not relevant to this case, sets a less stringent standard.

[3] We note that on its face, ORS 662.070 limits the application of the clear proof standard to the issue of the union's liability or responsibility for "unlawful acts" and, like its federal counterpart, "is not addressed to the quantum of evidence required to prove the occurrence of the alleged 'unlawful acts.' " *Ramsey v. Mine Workers,* 401 US 302, 309, 91 S Ct 658, 28 L Ed 2d 64 (1971).

[4] The trial court entered findings which in part read:

"1.  Beginning August 8, 1983, and continuing at various times thereafter, including the morning of August 9, 1983, mass picketing and violence have occurred at plaintiff's Round Prairie sawmill located in Douglas County, approximately seven miles east of Winston, Oregon, thereby interfering with the ingress to and egress from plaintiff's premises and intimidating persons wishing to enter, leave or work on the premises.

"2.  Such mass picketing and violence have been committed, authorized and ratified by defendants Lumber and Sawmill Workers, Local No. 2949; J. Birchfield; Ken Devasser; Billy Frazier; Bill Centers; Danny Taylor; Bill Miller; and John Does 1-90.

"3.  Such mass picketing and violence are unlawful under Oregon law.

"4.  Such mass picketing and violence will be continued unless restrained.

"5.  Substantial and irreparable injury to plaintiff's property including irreparable damage to plaintiff's business will occur unless a preliminary injunction is issued to restrain such mass picketing and violence.

"6.  Greater injury will be inflicted upon plaintiff if an injunction against such mass picketing and violence does not issue than will be inflicted upon defendants by the issuance of an injunction.

"7.  Plaintiff has no adequate remedy at law.

"8.  Plaintiff has requested the Douglas County Sheriff's Department, the public officers charged with the duty to protect plaintiff's property, to stop the picketing; but said public officers have not stopped the mass picketing and violence and are unable or unwilling to furnish adequate protection to plaintiff.

"9.  Defendant Willamette Valley District Council of Lumber and Sawmill Workers and defendant Western Council of Lumber, Production and Industrial Workers did not commit, authorize or ratify such mass picketing and violence."

"IT IS THEREFORE ORDERED that, effective from and after August 16, 1983, at 5 p.m., all defendants above named, except defendants Willamette Valley District Council of Lumber and Sawmill Workers and Western Council of Lumber, Production and Industrial Workers, be and they hereby are restrained and enjoined during the pendency of this action from doing or attempting to do or causing to be done, directly or indirectly, by any means, method or devices whatsoever, any of the following acts:

"(1) Engaging in mass picketing or violence at or near the premises of plaintiff's Round Prairie sawmill in Douglas County, Oregon;

"(2) Stationing, placing or maintaining at any time, at or near the premises of plaintiff's Round Prairie sawmill, any more than the pickets as described in a, b and c below:

"(a) Six (6) pickets, located 35 feet to the south of the Roberts Mountain Road entrance to the sawmill premises, on the opposite side of said road from the entrance;

"(b) Two (2) pickets, located at the entrance to the sawmill log yard off Dole Road; and

"(c) Four (4) pickets, located on the opposite side of Dole Road from the sawmill log yard entrance.

The personal presence of defendants Glen J. Birchfield and Ken DeVasser at the above picket locations shall not be counted toward the above specified limits on the number of pickets.

"(3) Blocking, stopping, impeding, delaying or otherwise interfering with entrance into or exit from each entrance and exit of plaintiff's Round Prairie sawmill; and

"(4) Engaging in rock-throwing, intimidation or threats against any and all persons attempting to gain entrance to or leave from plaintiff's Round Prairie sawmill."

The direct appeal statute, ORS 662.120, is silent as to the scope of appellate review. The plaintiff asserts that the granting or denial of injunctive relief "is within the sound discretion of the trial court," and that we can overturn the trial court only if the record reveals palpable legal error or if the findings of the trial court have no support in the evidence. We disagree.

In Oregon, appeals in equity suits have always been tried *de novo. Haines Com'l Equip. Co. v. Butler,* 268 Or 660, 662, 522 P2d 472 (1974); *Levene v. Salem,* 191 Or 182, 199, 229 P2d 255 (1951); *Goldsmith v. Elwert,* 31 Or 539, 544, 50 P 867 (1897); *Heatherly v. Hadley,* 4 Or 1, 9 (1869). *See also Oregon Lbr Co. v. E Fork Irr Dist.,* 80 Or 568, 571-72, 157 P 963 (1916) (de novo review in suit for injunction).

Prior to 1979, ORS 19.125(3) provided:

"Upon an appeal from a decree in a suit in equity, the cause shall be tried anew upon the record."[5]

Since January 1, 1978, except for specific exceptions such as that found in ORS 662.120, jurisdiction of all appeals is in the Court of Appeals. Or Laws 1977, ch 158. In 1979, consistent with the 1977 legislative amendment that all equity appeals go to the Court of Appeals, ORS 19.125 was amended to provide that "the Court of Appeals shall try the cause anew upon the record." Or Laws 1979, ch 396.

■■ Although ORS 19.125(3) refers to *de novo* review in the Court of Appeals, because of the long standing rule that equity cases are tried *de novo,*[6] we have no doubt that our scope of review in this appeal is the same as that which existed before the Court of Appeals was given jurisdiction in equity appeals.[7] We review the cause "anew upon the record." ORS 19.125(3).

We therefore turn to a consideration of the evidence to determine whether clear proof exists that any defendant against whom relief is sought actually participated in, actually authorized, or ratified after knowledge, any unlawful acts. ORS 662.080(1).

---

[5] Or Laws 1965, ch 177, § 5.

[6] Prior to the adoption of ORS 19.125(3), de novo review was governed by ORS 17.440, which was repealed by Oregon Laws 1965, chapter 177. ORS 17.440 was one of a number of codifications that date back to Deady's Code. Oregon's original statutes stated that "upon an appeal from a decree given in any court, the suit shall be tried anew upon the transcript and evidence accompanying it." D. Civil Code § 533 (1864).

[7] In fact, although ORS 19.125(4), which was added in 1979 when ORS 19.125(3) was modified, gives the Supreme Court the discretion to limit its review of the de novo review of the Court of Appeals, it in no way limits this court's power to review a suit in equity de novo. *Haguewood and Haguewood,* 292 Or 197, 199, 638 P2d 1135 (1981).

## III.
## THE EVIDENCE

■    L-P and Union had a collective bargaining agreement covering workers at its mill at Round Prairie, Oregon. The contract expired on May 31, 1983. A strike began on June 24, 1983. On July 8, 1983, L-P resumed mill operations. Between June 24 and August 8, 1983, union members picketed the entrance to the mill. Two pickets were the norm, but on some occasions there were as many as 30 or 40.

Defendant Glen Birchfield is the Business Agent of Local 2949. Defendant Ken DeVasser is the Assistant Business Agent. Birchfield did not testify. DeVasser testified that the picketing was performed under a plan in which one person was designated as the picket captain. Union members who worked picket shifts were paid by the union. DeVasser encouraged other local members (many of whom were employed by a different employer at a nearby mill) to assist the paid pickets by taking pop and coffee to them, helping carry picket signs and giving support.

The key days in question are Monday and Tuesday, August 8 and 9, 1983. On Friday, August 5, Ralph Sandsteve, L-P's plant manager, received an anonymous phone call that there was going to be "a hundred or more demonstrators at the mill" on the following Monday. On Monday, August 8, he arrived about 5:30 a.m. and found two pickets in their usual places by his office. By 6 a.m. the pickets were fast increasing and were yelling, calling the working employees scabs and sons-of-bitches. There was rock throwing intermittently between 6:30 and 11 a.m. Some rocks hit the office.

Sandstede took photographs of the crowd. He identified several L-P employees as being in the group, but only two as rock throwers. Only one of those, Billy Frazier, was a named defendant in this suit.

At one point during the morning, the company pump, which supplies water for mill operations and fire protection, was winched out of the water by union members. It was replaced in the river by Sandstede, undamaged.

DeVasser arrived at the mill at approximately 8 a.m. Business Agent Birchfield was not present. When DeVasser

arrived, pickets approached his car and he told everyone to keep calm, that the union wanted no violence. He was informed by union members that one man had been drinking. He arranged for that man to be escorted from the vicinity. DeVasser heard about, but did not see, rock throwing. He "told the guys they better knock that off or they would be going to jail."

DeVasser then went for a supply of coffee and was gone approximately 30-45 minutes. When he returned, he was again told that some people had been throwing rocks but he saw no rock throwing. He again advised the crew that he "did not want that going on." He saw no damage done that day to L-P property. He was not present when the pump was removed from the water.

Early on Tuesday, August 9, a group of approximately 60 pickets gathered at the Round Prairie truck entrance by 5:30 a.m. The police had arrived at approximately 4 a.m. When nonstriking employees began arriving, some rock throwing started. According to Deputy Sheriff Norris, the targets of the rock throwing were the mill employees and their cars. He could hear but could not see rocks hitting cars, and he later observed one or two cars which had been dented by rocks. Mr. Sandstede observed a total of eight cars, all belonging to employees, which were dented. One employee had his window broken out by a rock and received slivers of glass in his hand and eye. He was treated in a doctor's office later that day. Birchfield was present during a portion of Tuesday morning, as was DeVasser. According to Sgt. Norris, Birchfield did nothing to encourage or authorize anyone to do any damage.

Little or no evidence suggests that Birchfield or DeVasser planned, directed, or participated in any of the threats or violence or in any unlawful act. The strongest evidence of actual participation by union officials is that three shop stewards and the president of the local, Joe Potter, were among those present when the violence occurred on Monday. None of these persons was a named defendant and none was called as a witness. There is no evidence that any of them threw rocks or otherwise acted unlawfully. They were present during the violence, and they were probably aware of what was going on. However, Ralph Sandstede, the L-P plant manager,

testified that he saw no union officials throw rocks nor did he see any union officials encourage others to do so.

The plaintiff claims that the conduct of DeVasser, Birchfield, the shop stewards and local president shows, at least, that they either knowingly tolerated the unlawful acts and gave silent approval to them or that their failure to act when they had the authority and power to control the violence is sufficient to establish union responsibility. We do not reject the legal validity of such contentions, but based on our review of the evidence, we do not believe that the plaintiff has made a case based upon that theory.

We have no doubt that unlawful acts were committed by some union members, union members who, with but two exceptions, are unidentified. No evidence suggests participation by union officials other than as set forth above.

In order to obtain an injunction against a union, its agents, officers, or members under ORS 662.010-662.130, the complainant must establish, by clear proof, that the party against whom relief is sought either (1) actually participated in the acts complained of, or (2) actually authorized the acts complained of, or (3) ratified such acts after having actual knowledge thereof. ORS 662.070. The evidence of individual participation by Birchfield, DeVasser, or Potter meets none of those tests. As stated earlier, neither Birchfield nor Joe Potter testified.

In light of the legislative policy to keep labor disputes out of the courts absent clear proof of involvement by those against whom injunctive relief is sought, we believe that the evidence in this case (except for one defendant, discussed below) is insufficient to support injunctive relief.[8]

---

[8] We take note that L-P sought and obtained an injunction against "mass picketing." "Mass picketing" is not further explained in the L-P complaint, the findings or in the temporary injunction. The act specifically and expressly protects the right to act in concert. *See* ORS 662.020, ORS 662.050 and ORS 662.060. The act protects against the threat or commission of *unlawful* acts such as fraud, violence or intimidation. ORS 662.050(5); ORS 662.080(1). The act does not appear to prohibit "mass picketing" unaccompanied by fraud, violence, intimidation or other unlawful acts. *Cf. Wallace v. International Ass'n.,* 155 Or 652, 63 P2d 1090 (1937).

## IV.
## CONCLUSION

We likely would affirm the trial court if the evidence clearly showed that the union or its officers actually participated in, authorized or ratified the unlawful acts described above. But clear proof of individual or union involvement is lacking, except for defendant Billy Frazier.

We therefore order that the temporary injunction be vacated as to all defendants except Billy Frazier. As to Frazier, the decree is affirmed insofar as it enjoins and restrains him from unlawful acts of the kind described in paragraphs (3) and (4) of the temporary injunction.

Modified and remanded to the trial court for entry of a further temporary injunction consistent with this opinion.