Argued May 7, decided June 3, rehearing denied September 23, 1913.

## FIRST NATIONAL BANK *v.* McCREARY.

(132 Pac. 718: 134 Pac. 1180.)

Chattel Mortgages—Conversion—Rights of Assignee.

1. An assignee of a chattel mortgage may not recover for an
alleged conversion of the mortgage chattels which took place prior to
the assignment of the mortgage.

Chattel Mortgages—Purchase of Mortgage Property—Priority.

·2. A bank advanced money to O. at the instance of an agent of
M., for the purpose of buying horses which he afterward sold to M.
O. executed a chattel mortgage on horses bought by him with the
advance and delivered notes and a mortgage securing them to M. as
security. M. refused to accept the notes and mortgage and also had
previously refused to honor a draft, in favor of the bank, for the ad-
vance. The bank acting for O. demanded back the notes and mort-

gage, which M. refused, stating that he would hold them until settlement with his agent. *Held*, that M. had no right to hold the notes and mortgage as against the bank, and the bank could purchase the horses from O. without regard to the notes and mortgage, and was entitled in a suit for that purpose to a cancellation of a mortgage as a cloud on the title of the horses so purchased.

Chattel Mortgages—Purchase of Mortgage Property—Rights of Assignee of Mortgage.

3.  *Held*, also, that an assignee of such mortgage after the purchase of the horses by the bank could have no more rights than his assignor had.

Chattel Mortgages—Delivery and Acceptance.

4.  Where a chattel mortgage was signed by the mortgagor, without knowledge of the mortgagee, who refused to accept the same on delivery to him, there was no mortgage.

[As to what constitutes a proper execution of a chattel mortgage, see note in 137 Am. St. Rep. 474.]

Chattel Mortgages—Delivery and Acceptance—Recording.

5.  The fact that a chattel mortgage is recorded without knowledge of the mortgagee does not constitute a delivery and acceptance, where there was none in fact.

Chattel Mortgages—Acceptance.

6.  Where a creditor once refused to accept a chattel mortgage, he cannot afterward accept it without the debtor's consent.

Chattel Mortgages—Nature—Assignment.

7.  A valid chattel mortgage is a conditional sale, and, when an assignment is made, it can be no more than that.

From Grant: Dalton Biggs, Judge.

Statement by Mr. Justice Bean.

This is a suit by the First National Bank of Grant County against W. H. McCreary and Thomas B. McPherson.

Defendant McCreary appeals from a decree in favor of plaintiff. The facts necessary for a determination of this case are substantially as follows: On the 3d day of January, 1907, Dean Officer executed to the defendant Thos. B. McPherson a chattel mortgage upon 120 head of horses, more or less, upon the range in Grant County, Oregon, to secure the payment of two certain promissory notes, one for the sum of $2,600 and one

for $2,000, executed by Dean Officer and W. H. Officer on that date. This mortgage was duly recorded in Grant County. Defendant McCreary alleged that plaintiff wrongfully converted the horses to his own use in Grant County, Oregon; that on the 29th day of June, 1907, prior to the maturity of either of the notes, Thos. B. McPherson, who was then in possession of the notes and mortgage, indorsed and transferred the same to him; and that he purchased them in good faith and in due course; that the value of the horses is $6,000. On October 20, 1908, McCreary demanded of plaintiff the possession of the personal property described in the mortgage, and commenced an action at law against the bank for the sum of $6,000, for the conversion of the horses. The bank filed an answer to the complaint, and at the same time filed a complaint in equity in the nature of a cross-bill, setting forth all the facts, and alleging, among other things, that John Carter was the authorized agent of T. B. McPherson, and as such agent was engaged in buying livestock in Grant County, Oregon; that Carter employed one Dean Officer to assist him in buying horses; that between May 1, 1906, and January 3, 1907, in Grant County, the plaintiff, at the request of Carter, advanced $4,600 to Officer to be used in purchasing horses in that vicinity which were to be afterward sold to McPherson; that the money was so used; that on January 3, 1907, John Carter, in order to cover the money advanced to Officer by plaintiff, drew a draft on McPherson in favor of plaintiff for $4,600, which draft was forwarded to McPherson at his residence, South Omaha, Nebraska; that upon presentation of the same McPherson refused to honor it and the draft was protested; that on that date Dean Officer executed to McPherson the chattel mortgage mentioned as security for the reimbursement to him of the $4,600; that

on the 7th day of January, 1907, the notes and chattel mortgage were forwarded to McPherson at Omaha; that McPherson upon receiving them declared that the transaction was without authority from him and refused to accept such notes and chattel mortgage, whereupon plaintiff at the request of Dean Officer demanded the return of the same, which McPherson refused, stating that he would hold them until he could obtain a settlement with Carter, and that he had advanced about $3,000 in payment for a portion of the horses described in the mortgage. After McPherson repudiated the mortgage, and prior to the 29th day of June, 1907, plaintiff purchased the horses from Dean Officer, in order to recover the money it had advanced for such purchase, for the sum of $4,600, and claims to be the owner thereof. Plaintiff alleges that the mortgage is void, for the reason that the same was given without consideration, was never delivered to the mortgagee, was executed without the knowledge of the mortgagee and against his wishes, and that McPherson procured the possession of the same through fraud and mistake. Plaintiff asks to have the mortgage annulled and canceled of record as a cloud upon its title to such horses. John Carter began to purchase horses for the Uintah Hereford Cattle Company of Nebraska and McPherson in 1906. The arrangement was that McPherson should furnish money for the purchase of the horses, upon contracts being approved by him; the horses to be shipped to him at Omaha. Carter went to the plaintiff bank with a letter of credit from McPherson to the amount of $10,000. Afterward Carter employed Dean Officer, who purchased several head; Carter from time to time drawing drafts upon McPherson or his firm for the payment thereof. McPherson advanced about $3,000 which he claimed he paid for the horses included in the mortgage in

question at the time the draft for $4,600 was drawn upon him. The Circuit Court rendered a decree canceling the mortgage as fraudulent.

Affirmed : Rehearing Denied.

For appellant there was a brief over the name of *Hicks & Marks,* with an oral argument by *Mr. J. E. Marks.*

For respondent there was a brief over the name of *Cattanach & Wood,* with an oral argument by *Mr. Wells W. Wood.*

Mr. Justice Bean delivered the opinion of the court.

Plaintiff contends that the chattel mortgage in question is void, and never became a lien upon the horses, for the reason that it was given without the knowledge or consent of the mortgagee and was never delivered. Defendant McCreary claims that the purchase of the horses was a wrongful conversion of his property. It is conceded that the indorsement of the notes would have carried with them the mortgage if the latter had been delivered. No assignment of the mortgage was ever recorded in Grant County. Plaintiff claims to be an innocent purchaser of the horses.

It will doubtless shorten this discussion to note that the original action was not brought upon the notes and mortgage, and that defendant's claim is not founded upon the same, strictly speaking, but is a claim for damages for the conversion of the personal property described in the mortgage. Briefly stated, this controversy is between the assignee of the mortgage and the purchaser of the mortgaged property.

At the time the bank purchased the horses of Officer, McPherson had repudiated the transaction relating to the notes and mortgage. The horses were principally

running upon the range. The bank took possession of the horses when it purchased them, and afterward, from time to time, gathered and sold 79 head. A number were gathered and sold before the assignments of the mortgage, and all were disposed of before any notice to plaintiff of such assignment. It is clear, we think, that the alleged conversation took place before the assignment of the mortgage to McCreary.

1. It is contended on behalf of the bank that the complaint in the action for the conversion was defective in not alleging that, at the time of the conversion, McCreary had title and the right of immediate possession, or that he was at that time in the actual possession of the horses, and that the bank wrongfully deprived him thereof, citing 38 Cyc. 2068; *Harrington* v. *Stromberg-Mullins Co.*, 29 Mont. 157 (74 Pac. 413); *Johnson* v. *Oregon Steam Nav. Co.*, 8 Or. 35; *Harvey* v. *Lidvall*, 48 Or. 558, 560 (87 Pac. 895); and other authorities. Substantially all the facts contained in the pleadings in the original action at law are set forth in the complaint, answer and reply in this suit, and the testimony in regard thereto has been taken. The propriety of determining the rights of the respective parties in this suit is not urged, and we do not understand that it is controverted on the part of the defendant McCreary. Jones, Chattel Mortgages (5 ed.), Section 510, states the rule thus: "A right of action for an injury to the property or to the mortgagee's right does not pass by his assignment of the mortgage. Thus, an assignee cannot sue for a conversion of property which has taken place before the execution of the assignment. The assignment passes all the mortgagee's right to the property, but does not pass his right to sue for a conversion of the property, or for injuries to it, while he was the legal owner of it." To the same effect, see 27 Cyc. 1299; 7 Cyc. 60; *Bowers* v.

*Bodley,* 4 Ill. App. 279.  We hold this to be the law; therefore McCreary cannot recover against the plaintiff, and the action at law for a conversion of the property cannot be maintained.  It is unnecessary to determine what the rights of McCreary are as to the notes or mortgage, as between him and the officers.

2, 3. Plaintiff seeks to have the chattel mortgage annulled and canceled of record, in order that the title given by it to the several parties to whom it has sold horses may not be disturbed, and that its ownership of the horses may not be interfered with.  In so far as the Officers are concerned, should any question arise as to the notes or mortgage, the latter should not be canceled.  We therefore consider it proper in this case to determine the rights only of plaintiff and defendant McCreary in the premises.

The delivery and acceptance of the mortgage are essential to its validity.  Without these there is no mortgage, but only an attempt at one, or a proposition to make one.  It is true, however, that although there may be no valid delivery of a mortgage at the time of its execution, a subsequent delivery will avail against those who have not in the meantime acquired rights to the property or interest in it.  But it is otherwise as to a creditor of the mortgagor who has acquired an interest in the property during such time: 1 Jones, Chattel Mortgages (5 ed.), § 104.  In this case Officer signed the mortgage on the horses and proposed to give it to McPherson.  Until the mortgage was accepted by McPherson it was not a mortgage or lien on the property.  McPherson repudiated the whole transaction and notified the bank that the same was not authorized or contemplated by him, and said in his letter: "I do not know Mr. Officer and certainly do not care to carry his paper."  This was an express refusal to accept the mortgage, and it was communicated

to the bank.    The latter had a right to rely upon such refusal by McPherson, and to deal with Officer in regard to the horses as though no mortgage had ever been drawn.    McPherson had no right to retain the mortgage signed by Officer in order to obtain a settlement with his agent Carter.    Carter was not a party to the transaction.

4. "Acceptance" is defined by Mr. Anderson in his dictionary as follows: "A receiving—with approval, or conformable to the purpose of a tender or offer." The mortgage was signed by Officer without the knowledge or consent of McPherson, the mortgagee, and when the latter refused to ratify the transaction there was no mortgage.    As was said by Mr. Justice Thayer in *Shirley* v. *Burch,* 16 Or. 83, at page 92 (18 Pac. 351, at page 356, 8 Am. St. Rep. 273), in speaking of the essentials of a mortgage: "One person cannot make a contract with another without the knowledge and consent of the latter; it must be a mutual agreement between the contracting parties.    A contract in form, with a person who is a stranger to it, stands upon the same footing as an assumed contract with a fictitious person.    It would lack the essential elements of a contract—the meeting of the minds of the parties."

5. A delivery of a mortgage is not complete without an acceptance by the mortgagee, which is essential to make a mortgage a valid instrument: 6 Cyc. 1009.    The fact that the mortgage was recorded does not constitute a delivery and acceptance where there was none in fact.    It is admitted that the mortgage was recorded without the knowledge or consent of the mortgagee.    The recording, therefore, would not amount to a delivery.    Jones, Chattel Mortgages (5 ed.), Section 106, states the rule as follows: "The delivery of a mortgage to the recorder, or the filing it in the proper office by the mortgagor, is not in itself such a

delivery as will operate to give the mortgagee any title under it, prior to his actual acceptance of the security'': See, also, *Bogard* v. *Barham,* 56 Or. 269, 277 (108 Pac. 214, 217).

6. Where a creditor once refuses to accept a mortgage, he cannot afterward accept it without the debtor's consent: 1 Jones, Mortgages (6 ed.), § 85. In other words, when the proposition to mortgage is rejected, the entire matter is dead and cannot be revived without a new proposition, a new agreement, a new meeting of the minds.

7. We are referring solely to the mortgage without reference to the notes. When McCreary took an assignment of the mortgage in question, he was attempting to obtain a certain interest in or lien upon personal property. A valid mortgage is a conditional sale, and when an assignment of such mortgage is made, it can be no more than that. The plaintiff advanced $4,600 to the agent of McPherson to pay for the horses, and the money was distributed to the various sellers. The bank acted in good faith. After McPherson had refused to honor the draft for the money so advanced, and after he had refused to accept the mortgage, the bank had the right to buy the horses in order to reimburse itself for the money advanced. This was done long before any claim of interest therein was made by the defendant McCreary. The equities of the case are with plaintiff.

The decree of the lower court will therefore be affirmed, except as to any question that may arise in regard to the mortgage as between plaintiff and Dean Officer; plaintiff to recover costs.

                    AFFIRMED: REHEARING DENIED.

Denied September 23, 1913.

## ON PETITION FOR REHEARING.

(134 Pac. 1180.)

MR. JUSTICE BEAN delivered the opinion of the court.

In the former opinion (132 Pac. 718) the number of horses described in the chattel mortgage was stated to be 120 head, more or less.   This should be corrected to read 310 head, more or less.   After an examination of the petition for rehearing, we adhere to our former opinion in other respects.

The petition is denied.

AFFIRMED: REHEARING DENIED.

---

First Motion to Dismiss Appeal denied April 15, 1913.

Second Motion to Dismiss Appeal allowed September 23, 1913.