[Civ. No. 10131. Second Appellate District, Division One.—April 21, 1936.]

FRANK SHAW MILLNER, Respondent, v. LANKERSHIM PACKING COMPANY et al., Defendants; SAMUEL M. JACKSON, Appellant.

Henry O. Wackerbarth for Appellant.

Mark A. Hall and Welburn Mayock for Respondent.

WHITE, J., *pro tem.*—This is an appeal by defendant Samuel M. Jackson from a judgment rendered against him in favor of Frank Shaw Millner, the substituted plaintiff herein, for $2,958.66. Before judgment the action was dismissed as to all defendants except the appellant herein.

Plaintiff's complaint presented two causes of action, both seeking damages for conversion.

In the first cause of action plaintiff alleged the execution and delivery by the defendants George R. Shuey and Elma Shaw Shuey to one Clara M. Shaw of a promissory note for $20,000, dated January 3, 1928; that said note was secured by a chattel mortgage upon certain cattle; that said mortgage was acknowledged and contained the customary affidavits of good faith; that the same was recorded in the office of the county recorder of Inyo County, California, and thereafter a certificate of the recording of said mortgage was filed with the Secretary of State of the state of California; that thereafter said chattel mortgage was recorded in the offices of the county recorders of Mono County, California, Esmeralda County, Nevada, and Ventura County, California; that at the time of the execution of said mortgage and at the time of recording the same in said Inyo, Esmeralda and Mono Counties, and at the time of the filing of said certificate, said cattle were situated in said counties; that thereafter a part of said cattle were moved to Ventura County; that on or about March 11,

1929, the defendant Bunney sold certain of said mortgaged cattle to the defendant Samuel M. Jackson, who was doing business under the firm name and style of Lankershim Packing Company; that said last-named defendant slaughtered the cattle, thereby converting the same to his own use, to plaintiff's damage in the sum of $535.50; that thereafter, on or about March 25, 1931, said Clara M. Shaw assigned said note and mortgage to the plaintiff; that thereafter, on or about March 26, 1931, an action was filed in the Superior Court of Ventura County to foreclose said chattel mortgage, and upon foreclosure and sale of the remaining mortgaged cattle a deficiency judgment for $13,071.23 was rendered. Plaintiff further alleged that the value of the cattle remaining under said chattel mortgage at the time of foreclosure and sale was "insufficient to satisfy the amount due plaintiff as the indebtedness represented by said note, chattel mortgage, and deficiency judgment as aforesaid".

In the second cause of action, plaintiff repeated substantially all of the allegations of the first cause of action, and alleged that on or about April 16, 1929, the defendant Jackson, doing business as Lankershim Packing Company, bought certain of said mortgaged cattle from the defendant Bunney and slaughtered the same, thereby converting said cattle to his own use, to plaintiff's damage in the sum of $2,304.23.

Among the several defenses pleaded, defendant claimed that if a conversion occurred, it occurred prior to the assignment of the chattel mortgage to the plaintiff, and that said assignment did not assign to said plaintiff a cause of action for the conversion of said cattle.

It appears from the record in this case that the defendant Bunney, who was alleged to have sold the cattle in question to appellant herein, obtained possession and control of said cattle during 1923, under and by virtue of a written agreement between the original owner, George R. Shuey, and defendant Bunney, whereby Shuey delivered said cattle to Bunney and Bunney agreed to drive the same to cattle ranges and to keep and care for the same and all increase. On July 1, 1925, said Shuey, as first party, and Bunney and the latter's wife, as second parties, entered into a written agreement, the preamble of which recited that Shuey was the owner of 424 head of stock cattle, and a number of calves over six

months of age, and five head of bulls, which cattle, according to the agreement, were then in charge of said Bunney under the 1923 agreement. The 1925 agreement further set forth that Shuey contemplated purchasing an additional 275 head of cattle, together with the range on which the same were kept, and it was agreed that Bunney should take all of the cattle, including the last-mentioned 275 head, and keep and care for the same. Said agreement further provided that said Bunney would be entitled each year to sell such cattle as he might see fit, provided, however, that he could sell only mature steers and cows, and heifers that were of inferior quality, and that he could not sell such a number as would reduce the amount of cattle below an agreed aggregate. Said agreement further provided the manner and terms under which Bunney could purchase said cattle.

Plaintiff acquired said note and chattel mortgage through an assignment executed March 25, 1931. The assignment of the note and mortgage to the plaintiff, Margie Shaw Kewley, for whom Frank Shaw Millner was substituted as plaintiff by reason of the death of said Margie Shaw Kewley and Millner's succession to her estate, was merely an assignment of the chattel mortgage, together with the note secured thereby, and did not contain any assignment of a cause of action against the defendant for the two conversions alleged in plaintiff's complaint. We therefore find that plaintiff's rights herein are predicated upon an assignment of the note and chattel mortgage under date of March 25, 1931, while the conversions are alleged to have taken place on March 11, 1929, and on April 16, 1929, approximately two years prior to the time that plaintiff herein acquired any right, title or interest in or to the chattel mortgage and note secured thereby.

Appellant assails the judgment herein principally upon the ground that an assignment of a chattel mortgage does not carry with it a cause of action for a previous conversion, and with that contention of appellant we find ourselves in accord.

The rule in this regard is laid down in Jones on Chattel Mortgages (vol. 2, sec. 510), as follows:

" . . . A right of action for an injury to the property or to the mortgagee's rights does not pass by his assignment

of the mortgage. Thus, an assignee cannot sue for a conversion of property which has taken place before the execution of the assignment. The assignment passes all the mortgagee's right to the property, but does not pass his right to sue for a conversion of the property, or for injuries to it, while he was the legal owner of it.''

In Cobbey on Chattel Mortgages (vol. 2, sec. 646, p. 851), we find the following:

'' . . . A right of action for injury to the property, already incurred at the time of the assignment, is not transferred unless specially mentioned. . . . ''

In Cyc. (vol. 27, p. 1299), the rule regarding a cause of action by the assignee for waste and conversion is contained in the following:

''And while the assignee will have no right to maintain an action for waste committed upon the mortgaged property, or for any other injury to it or conversion of it, happening before the assignment to him, he may sue any person who injures the property or does any act diminishing the value of the security, after the assignment.''

See, also, Cyc., volume 7, page 60.

Although there appears to be two lines of authority, one holding that the assignment of the mortgage carries with it the right to recover for injury to the personal property, either by conversion, waste or destruction, we are of the opinion that the weight of authority supports the rule that in order to maintain such a suit the assignee must have been the owner or entitled to the possession of the property, or have had some right or interest in it, at the time of the wrongful act complained of. Had respondent here been the owner of the mortgage by assignment at the date of the alleged conversion, the lien created by the mortgage would have enabled him to maintain a suit for any act done by appellant injurious to respondent's rights, or he might pursue the property and assert his rights against anyone in possession. The assignment upon which respondent herein predicates his rights passed all the mortgagee's right to the mortgaged property and invested the assignee with all the rights of the mortgagee of the property; but such assignment could not convey with it the right to sue all persons through whose hands it had passed for conversion of the property before the assignment

and before respondent herein had any right, title or interest in such property.

Respondent cites us to sections 964, 2936, 3522, 1084, 3510 and 3511 of the Civil Code, referring to rights which inure to the benefit of a transferee, but we are of the opinion that such sections do not contemplate that the assignee of a chattel mortgage thereby succeeds to a right of action for tortious acts committed by way of conversion against the mortgaged property prior to the time that such assignee acquired any interest by way of lien in the mortgaged property. (*Bowers* v. *Bodley*, [1879] 4 Ill. App. 279; *First National Bank of Grant County* v. *McCreary*, [1913] 66 Or. 484 [132 Pac. 718, 134 Pac. 1180] ; *Hicks* v. *Cleveland*, 39 Barb. (N. Y.) 573; *Overton* v. *Williston*, 31 Pa. St. 155.)

Respondent cites us to the case of *Lazard* v. *Wheeler*, 22 Cal. 139, but we do not believe that case in point, because it involved certain warrants owned by one Johnson, from whom the defendant was charged with wrongfully taking the warrants. Johnson transferred all of his right, title and interest in and to the warrants to the plaintiff, Lazard. After the execution of the assignment the assignee made repeated demands upon the defendant for delivery to him, as the owner, of the warrants in question; but the defendant refused to deliver them to the assignee, but kept and detained them unlawfully from such assignee. This of itself gave to the assignee a right to institute a suit in replevin to recover the goods of which he was the owner, and which goods were being unlawfully detained, thereby depriving the owner of his right thereto. Conceding that a right of action for the wrongful taking and conversion of personal property is assignable, still we are of the opinion that the mere assignment of a note and mortgage does not give to the assignee thereof the right to sue for a conversion committed, as in the instant case, some two years before the assignee obtained any right, title, or interest by way of lien in and to the cattle in question.

The conclusion at which we have arrived on this proposition makes it unnecessary for us to discuss or decide the other points raised by appellant.

For the foregoing reasons, the judgment appealed from is reversed and the cause remanded, with directions to the court below to enter judgment for the appellant.

York, Acting P. J., and Doran, J., concurred.